**UNITED STATES**

v.

**Captain Spencer D. WALES, 543–58–5123 FR, United States Air Force.**

**ACM 27300.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 18 June 1988.

Decided 29 Sept. 1989.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Darla G. Orndorff.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Major Terry M. Petrie, Major Kathryn I. Taylor, Major Jeffrey H. Curtis and Captain David G. Nix.

Before LEWIS, BLOMMERS and KASTL, Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

Captain Spencer D. Wales was convicted by a general court-martial of adultery and two specifications of fraternization, in violation of Articles 133 and 134, UCMJ, 10 U.S.C. §§ 933, 934. He was sentenced by a panel of officers to be dismissed from the Air Force.

Captain Wales, who was married at the time, was employed as a Wing Logistics Support Officer in the Resource Management complex at Hill Air Force Base, Utah. Wales' superior was Lieutenant Colonel Williams, the Deputy Commander for Resource Management. Also working for Colonel Williams was Second Lieutenant Parrish; under Parrish, in turn, was Sergeant Elizabeth (Beth) Alcon. She was married to Sergeant Louie Alcon, who worked elsewhere on the base. The relationship between Sgt Beth Alcon and the appellant is the focus of the case before us.

The appellant, Lt. Parrish, and Sgt Elizabeth Alcon deployed to Norway as part of a joint Norway–United States exercise involving F–16 aircraft. On the deployment, in September and October 1988, the appellant was in charge as the ranking officer of the three-member task force.

While in Norway, Wales and Beth Alcon befriended each other and eventually had consensual intercourse in both Fliesland and Oslo. This led to the fraternization Charge and specifications, given Wales' position in the task force and their alleged conduct.

After returning to the United States, the two again had consensual intercourse. Hence, the Charge alleging conduct unbecoming, framed in terms of adultery.

■ Before us, in able oral and written argument, appellate defense counsel mount a sweeping attack against the fraternization offenses. Essentially, the defense arguments as to this matter boil down to these three:

1. There was insufficient evidence to show that appellant violated a contemporary custom of the Air Force. The defense

points out that the sole evidence on this point at trial came from the military judge having taken judicial notice of Air Force Regulation (AFR) 30–1, *Air Force Standards*, paragraph 7a (May 4, 1983). The defense argues that AFR 30–1 was an insufficient basis to show a *current* Air Force custom against fraternization. To the defense, the present version of AFR 30–1 simply updates the regulation which had been in existence at the time of the misconduct alleged in *United States v. Johanns*, 17 M.J. 862 (A.F.C.M.R. 1983) (en banc), *aff'd/rev'd in part*, 20 M.J. 155 (C.M.A.1985).[1]

2. The appellant was prejudiced when the military judge failed to instruct the members that either: (a) the existence of a chain of command; or (b) a supervisory relationship between the parties were *elements* which the prosecution must prove beyond a reasonable doubt.

3. The specifications concerning fraternization fail because they do not on their face state words of criminality or show a superior-subordinate relationship. *See United States v. Minor*, 25 M.J. 898 (A.C. M.R.1988).

The "high tide" for would-be fraternizers occurred with this Court's fact-specific decision in *Johanns*, which found an erosion of the custom against fraternization in the Air Force. *See* Mahoney, *Fraternization: Military Anachronism or Leadership Challenge?* 28 A.F. Law Rev. 153 (1988). Since that time, the following matters have occurred:

—the new Manual for Courts–Martial for the first time set forth a definition of "fraternization" as an offense under Article 134. *See* MCM 1984, Part IV, paragraph 83 and Analysis, page A21–101;

—AFR 30–1 was rewritten and included for the first time a definite prohibition against fraternization at paragraph 7a;

—the concept of fraternization has been the subject of Air Force initiatives in educating new officers. Mahoney, *supra*, at 180–181.

The teaching of *Johanns* is sufficiently clear: "mutually voluntary, private, non-deviate sexual intercourse with an enlisted member, neither under his command nor supervision," was found to be not actionable. *United States v. Johanns*, 17 M.J. at 869. Here, the short answer in regard to Captain Wale's fraternization is that his situation falls outside the *Johanns* criteria *because his enlisted partner was under his command at the time of the offenses in Norway.*

■■■ We are satisfied that the extract from AFR 30–1 sufficiently gave the voting members—as reasonable persons with experience in military leadership—a sufficient yardstick of current Air Force custom.[2] We are also convinced that the military judge correctly instructed the court members on the factors to consider in assessing whether the conduct of Captain Wales compromised the chain of command or otherwise undermined military discipline and good order. *See United States v. Moultak*, 21 M.J. 822, 832–833 (N.M.C.M.R. 1985). Finally, we conclude that the specifications sufficiently alleged the offenses of fraternization under Article 134, UCMJ. MCM 1984, Part IV, paragraph 83; *United States v. Clarke*, 25 M.J. 631, 634 (A.C.M. R.1987) *aff'd*, 27 M.J. 361 (C.M.A.1989). *See also United States v. Tedder*, 24 M.J. 176, 182 (C.M.A.1987) and *United States v. Callaway*, 21 M.J. 770 (A.C.M.R.1986).

1. For an in-depth analysis of the subject, see Carter, *Fraternization*, 113 Mil.L.Rev. 61 (Summer 1986). The author's research in pre–UCMJ courts-martial reveals at least five cases of officer-enlisted heterosexual misconduct. *Id.* at 79 n. 105. Further useful research is found in Mahoney, *Fraternization: Military Anachronism or Leadership Challenge?* 28 A.F. Law Rev. 153, 157–164 (1988).

2. *See United States v. Smith*, 18 M.J. 786, 789 (N.M.C.M.R.1984). For development of the view that officer fraternization on terms of military equality with enlisted members need not be further defined in courts-martial, see Carter, *supra*, n. 1. The author comments that: "Although the quoted phrase is not defined or explained, any common sense interpretation conveys its meaning. It includes any association where the officer fails to maintain a professional superior-subordinate relationship with an enlisted person." Carter, *supra*, at 116–117. *See also* Mahoney, *supra*, at 160–161.

We have considered the other matters raised by the appellant and resolve them adversely to his contentions.

The findings of guilty and the sentence are correct in law and fact and, based upon the entire record, are

AFFIRMED.