**UNITED STATES**

v.

**Captain Edward T. FOX, 202–40–7183 FR, United States Air Force.**

**ACM 28125.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 5 Sept. 1989.

Decided 18 Sept. 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair, Major George P. Clark and Captain Bernard E. Doyle, Jr.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni, Major Terry M. Petrie and Captain Morris D. Davis.

Before O'BRIEN, PRATT and RIVES, Appellate Military Judges.

DECISION

O'BRIEN, Chief Judge:

Sometime after the summer of 1986, when the appellant, Captain Edward T. Fox assumed command of the 23rd Transportation Squadron at England AFB, Louisiana, his marriage began to deteriorate. In the fall of 1987, he became acquainted with Sue D., who sang with him in the Chapel choir. This relationship became increasingly intimate until the appellant and Ms. D. engaged in sexual intercourse on approximately four occasions between April and August, 1988.

In late 1988, Master Sergeant KA was detailed to the appellant's squadron, and on 20 February 1989 he officially became her reporting official. After working late together one evening in January, she provided him with her home phone number. A few days later he came to her on-base quarters in uniform during duty hours, and sexual intercourse ensued. This affair between the two continued until June, with

most of the sexual intercourse taking place during trips out of town to chess matches.

Fox's misconduct led to three specifications under Article 134 of the UCMJ, 10 U.S.C. § 934, two of adultery and one of fraternization. He was found guilty, contrary to his pleas, and was sentenced by members to forfeit $1,000.00 per month for ten months and a dismissal.

Appellant asserts four errors for our consideration:

## I

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY FAILING TO CONDUCT SUFFICIENT INQUIRY INTO APPELLANT'S MOTION TO DISMISS FOR IMPERMISSIBLE DISCRIMINATORY PROSECUTION.

## II

THE CUSTOM OF THE AIR FORCE AGAINST FRATERNIZATION HAS BEEN SO ERODED AT ENGLAND AFB ... AS TO MAKE CRIMINAL PROSECUTION UNAVAILABLE AGAINST AN OFFICER FOR ENGAGING IN CONSENSUAL, PRIVATE, NON–DEVIATE SEXUAL INTERCOURSE WITH AN ENLISTED MEMBER UNDER HIS COMMAND.

## III

SPECIFICATION ONE OF THE CHARGE FAILED TO STATE AN OFFENSE PUNISHABLE BY COURT–MARTIAL BECAUSE IT DID NOT ALLEGE A SUPERIOR SUBORDINATE RELATIONSHIP BETWEEN APPELLANT AND [MSGT KA].

## IV

SPECIFICATION ONE AND TWO OF THE CHARGE ARE MULTIPLICIOUS FOR SENTENCING PURPOSES.

■ Prior to reaching these issues we must deal with the threshold question of appellant's legal representation. While his post-trial presentation to the convening authority was made by his civilian counsel and he appears before us represented by military appellate counsel, Captain Fox appeared *pro se* at his court-martial. Because of this self-representation, appellate defense counsel assert that he was entitled to special treatment by the military judge at trial and by this court on appellate review. Specifically, appellant contends in the first assignment of error that because Captain Fox represented himself, the military judge should have "*sua sponte* required the government to put on direct evidence to rebut the allegation of impermissible consideration of race, or he should have granted the motion." In their second appellate issue, counsel urge us not to invoke waiver. They claim: "Out of basic fairness, when an accused proceeds *pro se,* he should be accorded more latitude in the preservation of appellate issues."

In the absence of over-reaching by the prosecution (which we do not find here), we do not agree that having once made the decision to waive counsel, the appellant should thereafter achieve some sort of appellate advantage. As this court has observed in the past:

> We acknowledge that the pitfalls of self-representation are many and deep, but an accused is allowed to make this decision, if he is told of the dangers and disadvantages and the record establishes "he knows what he is doing and his choice is made with his eyes open." *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975).

*United States v. Mogavero,* 20 M.J. 762, 764 (A.F.C.M.R.1985).

Captain Fox's waiver of counsel was accepted by the military judge only after he found the appellant "competent to understand the disadvantages of self-representation," and that the waiver was "voluntary and understanding." R.C.M. 506(d). Appellant did in fact actively defend himself, submitting motions and objections, and he did consult extensively with the area defense counsel, who was present throughout the trial and seated behind him. While a trained lawyer may well have done some things differently, "any trial errors result-

ing from [appellant's] choice of tactics must rest on his shoulders." *Mogavero,* 20 M.J. at 764.

## I

We turn now to the principal issue litigated by the appellant at his trial, which is embodied in the first assertion of error. He contests the military judge's denial of his post-arraignment motion to dismiss the charge and specifications for "impermissible discriminatory prosecution."

In support of his motion, Captain Fox presented evidence that a lieutenant was investigated by the Air Force Office of Special Investigations (OSI) for alleged fraternization and homosexual conduct with an enlisted person, and that the lieutenant received nonjudicial punishment which was later withdrawn. He further demonstrated that a captain was accused of having had an adulterous affair with the wife of an airman first class. The captain received a reprimand. He alleged that a vice wing commander was observed in a compromising situation in a parked car at the golf course late at night with a captain of the opposite sex, and finally he stated that two non-commissioned officers had been involved in adulterous relationships. None of these incidents resulted in courts-martial.

The prosecution countered with evidence that a colonel and a major had recently been tried by court-martial at other bases within the same command, by the same general court-martial convening authority that referred Captain Fox's case to trial, for the same offenses (fraternization and adultery).

Appellant contended at trial and asserts on appeal that he had been singled out for prosecution and that he was a member of a minority race while the other offenders were either white or Asian. Counsel urge a post trial hearing pursuant to *United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (C.M.A.1967).

Appellant's assertion that he has demonstrated five other fraternization cases at England AFB which did not result in courts-martial is incorrect. Of all the incidents proffered by the appellant, only one involved criminal fraternization, i.e., misconduct between an officer and an enlisted person. None involved a commander and an enlisted subordinate. While the two incidents of fraternization noted by the prosecution did not occur at England AFB, they did result in courts-martial referred to trial by the same general court-martial authority as convened this court.* Even if we were to accept appellant's invitation to look more closely here because he chose to represent himself, we would not reach the question of discriminatory treatment of his case, since we find no evidence of disparate treatment of others similarly situated. *United States v. Hagen,* 25 M.J. 78 (C.M.A. 1987). In any event, we find no basis to disturb the military judge's finding of the absence of "any evidence whatsoever of any discriminatory practices ... on the part of any official or authority involving race, religious beliefs, sex or other improper grounds."

## II

The resolution of the second assigned error is intertwined with the allegation of discriminatory prosecution just addressed. Appellate counsel point to the sexual misconduct of others delineated in Captain Fox's motion (discussed in the previous issue) as evidence that the Air Force's custom against fraternization has, at England AFB, eroded past the point of criminal sanction. The key here is in the last three words of the issue they have framed: "under his command." None of the instances pointed to by the defense as establishing this "erosion" involved a commander and an enlisted member of his command. Only one involved an officer and an enlisted person.

In this case, the Air Force's policy against fraternization was before the court in the form of an excerpt of Air Force Regulation 30–1, which had been admitted into evidence, and the members were properly instructed. This court recently deter-

---

* With respect to this allegation of discriminatory prosecution, it is interesting to note that during the period in question, three successive colonels exercised the office of special court-martial convening authority at England AFB.

mined in *United States v. Wales*, 29 M.J. 586, 588 (A.F.C.M.R.1989):

> We are satisfied that the extract from AFR 30–1 sufficiently gave the voting members—as reasonable persons with experience in military leadership—a sufficient yardstick in Air Force custom. We are convinced that the military judge correctly instructed the court members on the factors to consider in assessing whether the conduct of [the appellant] compromised the chain of command or otherwise undermined military discipline and good order.

We find the above to be dispositive of this issue.

### III

Appellant claims the fraternization specification is fatally defective since it does not contain within it an allegation of a superior-subordinate relationship. This court considered that very issue less than a year ago and resolved it against the appellant. *United States v. Wales, supra.*

### IV

 Finally, appellant complains that the specifications which allege the accused's fraternization and adultery with MSgt KA are multiplicious for sentencing. We agree. *See United States v. Caldwell*, 23 M.J. 748 (A.F.C.M.R.1987). The military judge erroneously denied the appellant's motion at trial and instructed the court that the maximum punishment included four years confinement instead of three. We will therefore reassess.

Having reassessed the sentence, we are convinced the sentence is appropriate in relation to the findings of guilty, and is no greater than that which would have been imposed if the error had not been committed. *United States v. Sales*, 22 M.J. 305 (C.M.A.1986). Accordingly, the findings of guilty, and the sentence are

AFFIRMED.

Judges PRATT and RIVES concur.